NOTICE OF OBJECTION TO CONFIRMATION

WELLS FARGO BANK, N.A. has filed papers with the Court to object to the Confirmation of the Chapter 13 Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to object to the Confirmation of the Chapter 13 Plan, or if you want the Court to consider your views on the Objection, then on or before, you or your attorney must:

File with the Court an answer, explaining your position at:

**Clerk**
**U.S. Bankruptcy Court**
**50 Walnut Street, 3rd Floor**
**Newark, NJ 07102**

If you mail your response to the Court for filing, you must mail it early enough so that the Court will *receive* it on or before the date stated above.

You must also mail a copy to:

| | |
|---|---|
| PHELAN HALLINAN DIAMOND & JONES, PC | MARIE-ANN GREENBERG, TRUSTEE |
| 1617 JFK BOULEVARD, SUITE 1400 | 30 TWO BRIDGES ROAD, SUITE 330 |
| PHILADELPHIA, PA 19103 | FAIRFIELD, NJ 07004 |

Attend the hearing scheduled to be held on 12/12/2019 in the NEWARK Bankruptcy Court, at the following address:

**U.S. Bankruptcy Court**
**50 Walnut Street, 3rd Floor**
**Newark, NJ 07102**

If you or your attorney do not make these steps, the Court may decide that you do not oppose the relief sought in the Objection and may enter an Order granting that relief.

Date: December 13, 2019

/s/ Sherri J. Smith
Sherri J. Smith, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47923
Fax: 856-813-5501
Email: Sherri.Smith@phelanhallinan.com

**File No. 833289**
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard
Philadelphia, PA 19103
856-813-5500
FAX Number 856-813-5501
WELLS FARGO BANK, N.A.

| | |
|---|---|
| In Re:<br><br>    SHARON TRUFFIN<br><br><br><br>Debtor | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>NEWARK VICINAGE<br><br>Chapter 13<br><br>Case No. 19-23622 - JKS<br><br>Hearing Date: 12/12/2019 |

The undersigned, Phelan Hallinan Diamond & Jones, PC, attorneys for Secured Creditor, WELLS FARGO BANK, N.A., the holder of a Mortgage on debtor residence located at 106 SUMMIT AVE, BLOOMFIELD, NJ 07003 hereby objects to the Confirmation of the debtor proposed Chapter 13 Plan on the following grounds:

1.    On August 27, 2019, Movant filed a Proof of Claim listing pre-petition arrears in the amount of $5,208.30.  A copy of the filed Proof of Claim is attached hereto as Exhibit "A" and made a part hereof.

2.    Debtor's Plan fails to cure the delinquency pursuant to 11 U.S.C. §1322(b)(5). Debtor's Plan lists the Movant in Part 4(d) as Secured Claims are Unaffected by the Plan.

3.    Debtor's Plan should be amended to fully fund the arrears owed to Movant. Confirmation of Debtor's proposed Plan should be denied.

WHEREFORE, WELLS FARGO BANK, N.A. respectfully requests that the Confirmation of Debtor Plan be denied.

/s/ Sherri J. Smith
Sherri J. Smith, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47923
Fax: 856-813-5501
Email: Sherri.Smith@phelanhallinan.com

Dated: December 13, 2019

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

833289
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for WELLS FARGO BANK, N.A.

| | |
|---|---|
| In Re: | Case No:  19-23622 - JKS |
| SHARON TRUFFIN | Hearing Date: _____ |
| | Judge:  JOHN K. SHERWOOD |
| | Chapter:  13 |

## CERTIFICATION OF SERVICE

1.    I, Kevin Luber:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC,
who represents WELLS FARGO BANK, N.A. in the above captioned matter.

☐ am the _____ in the above case and am representing
myself.

2.    On December 16, 2019 I sent a copy of the following pleadings and/or
documents to the parties listed below:

Objection to Plan

3.    I hereby certify under penalty of perjury that the above documents were sent
using the mode of service indicated.


Dated:  December 16, 2019            /s/  *Kevin Luber*
                                          Kevin Luber

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| SHARON TRUFFIN<br>106 SUMMIT AVE,<br>BLOOMFIELD, NJ 07003 | DEBTOR | ☐ HAND-DELIVERED<br><br>☒ REGULAR MAIL<br><br>☐ CERTIFIED MAIL/RR<br><br>☐ E-MAIL<br><br>☐ NOTICE OF ELECTRONIC FILING (NEF)<br><br>☐ OTHER_____<br> (AS AUTHORIZED BY THE COURT *) |
| STUART D MINION, ESQUIRE<br>33 CLINTON ROAD<br>SUITE 105<br>WEST CALDWELL,  07006 | DEBTOR'S ATTORNEY | ☐ HAND-DELIVERED<br><br>☒ REGULAR MAIL<br><br>☐ CERTIFIED MAIL/RR<br><br>☐ E-MAIL<br><br>☒ NOTICE OF ELECTRONIC FILING (NEF)<br><br>☐ OTHER_____<br> (AS AUTHORIZED BY THE COURT *) |
| MARIE-ANN GREENBERG, TRUSTEE<br>30 TWO BRIDGES ROAD<br>SUITE 330<br>FAIRFIELD, NJ 07004 | TRUSTEE | ☐ HAND-DELIVERED<br><br>☐ REGULAR MAIL<br><br>☐ CERTIFIED MAIL/RR<br><br>☐ E-MAIL<br><br>☒ NOTICE OF ELECTRONIC FILING (NEF)<br><br>☐ OTHER_____<br> (AS AUTHORIZED BY THE COURT *) |
|  |  |  |

\* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1    SHARON TRUFFIN

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    District Of New Jersey

Case number  19-23622

---

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

The law requires that filers **must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:    Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Wells Fargo Bank, N.A. <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Wells Fargo Bank, N.A. Default Document Processing <br> Name | Wells Fargo Operations Center <br> Name |
| 1000 Blue Gentian Road  N9286-01Y <br> Number        Street | P.O. Box 31557 B6955-01B <br> Number        Street |
| Eagan            MN        55121-7700 <br> City                State            ZIP Code | Billings            MT        59107 <br> City                State            ZIP Code |
| Contact phone   1-877-891-0002 | Contact phone   1-877-891-0002 |
| Contact email   HEQBANKRUPTCYCH13@wellsfargo.com | Contact email   HEQBANKRUPTCYCH13@wellsfargo.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
WFCHEQ1923622NJM49811100

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known)_____     Filed on ___ / ___ / _____ <br> MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes.  Who made the earlier  filing? |

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  1100 |
| 7. **How much is the claim?** | $153,349.13_____. **For leases state only the amount of default.**<br><br>**Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Money loaned |
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes.  The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: 106 SUMMIT AVE  BLOOMFIELD, NJ 07003<br><br>**Basis for perfection:**    Mortgage/Deed of Trust<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                    $<br>**Amount of the claim that is secured:**    $ 153,349.13<br><br>**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ 5,208.30<br><br>**Annual Interest Rate** (when case was filed) 3.250%<br>☑ Fixed Step Rate per Loan Modification<br>☐ Variable |
| 10. **Is this claim based on a lease?** | ☑ No<br><br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____ |
| 11. **Does this claim involve a right to setoff?** | ☑ No<br><br>☐ Yes. Explain: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|
| | ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | | |

| **Part 3:** | **Sign Below** |
|---|---|

| The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.** | *Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    08/26/2019
           MM / DD / YYYY

    /s/Judi M. Upchurch
  Signature

**Print the name of the person who is completing and signing this claim:**

Name     Judi M. Upchurch
         First name        Middle name       Last name

Title      Vice President Loan Documentation

Company  Wells Fargo Bank, N.A.
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address
         Number      Street

         City               State     ZIP Code

Contact phone             Email |

**Part1: Mortgage and Case Information**    **Part 2: Total Debt Calculation**    **Part 3: Arrearage as of Date of Petition**    **Part 4: Monthly Mortgage Payment**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Case number: | 19-23622 | Principal balance: | 137053.10 | Principal & interest due: | 5208.30 | Principal & interest: | 578.70 |
| Debtor 1: | Sharon Truffin | Interest due: | 3999.16 | Prepetition fees due: | 0.00 | Monthly escrow: | N/A |
| Debtor 2: | | Fees, costs due: | 12296.87 | Escrow deficiency for funds advanced: | N/A | Private mortgage insurance: | N/A |
| Last 4 digits to identify: | 1100 | Escrow deficiency for funds advanced: | N/A | Projected escrow shortage: | N/A | Optional product: | 0.00 |
| Creditor: | Wells Fargo Bank, N.A. | Other: | 0.00 | Other: | 0.00 | Total monthly payment: | 578.70 |
| Servicer: | N/A | Less total funds on hand: | N/A | Less funds on hand: | N/A | | |
| Fixed Accrual/Daily Simple Interest/Other: | Average Daily Bal | Total debt: | 153349.13 | Total Prepetition arrearage: | 5208.30 | | |

*Additional changes to monthly payment amount may be required because interest rate adjustments or escrow requirement changes

**Part 5: Loan Payment History from First Date of Default**

| A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, Int & Escr past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied Funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 11/12/18 | | | | Beg Bal | 11/12/18 | | | | | | | 137053.10 | | | | |
| 11/12/18 | 578.70 | | | Pmt Due | 11/12/18 | 578.70 | | | | | | 137053.10 | | | | |
| 12/12/18 | 578.70 | | | Pmt Due | 11/12/18 | 1157.40 | | | | | | 137053.10 | | | | |
| 01/12/19 | 578.70 | | | Pmt Due | 11/12/18 | 1736.10 | | | | | | 137053.10 | | | | |
| 02/12/19 | 578.70 | | | Pmt Due | 11/12/18 | 2314.80 | | | | | | 137053.10 | | | | |
| 03/12/19 | 578.70 | | | Pmt Due | 11/12/18 | 2893.50 | | | | | | 137053.10 | | | | |
| 04/12/19 | 578.70 | | | Pmt Due | 11/12/18 | 3472.20 | | | | | | 137053.10 | | | | |
| 05/12/19 | 578.70 | | | Pmt Due | 11/12/18 | 4050.90 | | | | | | 137053.10 | | | | |
| 06/12/19 | 578.70 | | | Pmt Due | 11/12/18 | 4629.60 | | | | | | 137053.10 | | | | |
| 07/12/19 | 578.70 | | | Pmt Due | 11/12/18 | 5208.30 | | | | | | 137053.10 | | | | |
| 07/12/19 | | | | BK Filed | 11/12/18 | 5208.30 | | | | | | 137053.10 | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

## Addendum Page

Basis for asserting that the applicable party has the right to foreclose:  Debtor(s) executed a Creditor's home equity line of credit agreement (the "Debt Agreement") and agreed to be bound by its terms.  The Debt Agreement is secured by a mortgage or deed of trust.  Creditor is the original mortgagee/successor or beneficiary of the mortgage or deed of trust.

## Additional Disclaimers (where applicable)

## 410

**Part 2:** Question 9-Describe contains the property address.

## 410A

**Part 2:**

Principal Balance is from Part 5, Column M as of the Bankruptcy File Date.

Interest Due is the interest due as of the Bankruptcy File Date.

Fees, costs due is from Part 5, Column P as of the Bankruptcy File Date and includes any outstanding fees (i.e. late charges, property inspections) and cost (i.e. attorney costs), also included are corporate advances (i.e. tax, insurance) for non-escrowed loans as of the Bankruptcy File Date.  Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.

Other includes any applicable Lender Placed Insurance or other Optional Products (i.e. A & H, Life) due as of the Bankruptcy File Date. This line was added to ensure transparency.

Total Debt not to be used for payoff purposes.


**Part 3:**

Principal and Interest is the principal and interest portion of Part 5, Column G, as of the Bankruptcy File Date.

Pre-Petition Fees Due is from Part 5, Column P as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.

Other includes any applicable Lender Placed Insurance or Optional Products (i.e. A & H, Life) due as of the bankruptcy file date. This line was added to ensure transparency.

**Part 4:**

Optional Products includes any applicable Lender Placed Insurance or optional products (i.e. A & H, Life) due as of the Bankruptcy File Date. This line was added to ensure transparency.

(*)This disclaimer has been added to the form to explain that the monthly payment amount may change periodically throughout the life of the loan.

**Part 5:**

If any of the transactions in the loan payment history contain amounts for optional products or lender placed insurance, the amount for that product or insurance will be reflected in either the Contractual payment amount or the

Funds Received amount, and will be applied in those amounts. It will also be reflected in column G as described below.

<u>Column G</u> In addition to the items listed, this also includes any past due Lender Placed Insurance or optional products (i.e. A & H, Life) amounts, as applicable. Lender Placed Insurance and optional product (i.e. A & H, Life) amounts will not be included in columns H-Q due to no appropriate column heading for this type of transaction.

<u>Column N</u> will only be populated if the loan is Daily Simple Interest.

# Wachovia Bank, National Association
## Prime Equity Line of Credit Agreement & Disclosure Statement

Date of Agreement: **August 21, 2003**

Maximum Credit Limit: $ **145000.00**

Borrower(s)

**CARLOS  TRUFFIN**
**SHARON  TRUFFIN**

The Prime Equity Line of Credit Agreement & Disclosure Statement ("Agreement") contains the terms which apply to the Prime Equity Line Account ("Account") with Wachovia Bank, National Association. The words "I," "me," and "my," which also mean "we," "us," and "our," if more than one Borrower, mean the person or persons signing this Agreement. The words "you," "your," and "yours" mean Wachovia Bank, National Association ("Wachovia Bank, N.A.").

### ACCESSING THE PRIME EQUITY LINE
Wachovia Bank, N.A. will establish an Account and issue to me Prime Equity Line Checks and if applicable law permits, a Credit Card Access Device ("Card"). The Prime Equity Line Checks and Card can be used to obtain Advances from my Account during the Draw Period, up to the amount of the Maximum Credit Limit established in this Agreement. Wachovia Bank, N.A. will charge all Advances obtained under the terms of this Agreement to my Account. Advances made pursuant to Prime Equity Line Checks will be for the amount of the Prime Equity Line Check. Advances made pursuant to the use of a Card will be for the amount of the purchase or for the amount of the Advance obtained with the Card at any ATM or other outlet.

If I have a Demand Deposit Account with you and I request you to initiate an Advance from my Account, so that items presented against my Demand Deposit Account which would otherwise overdraw my Wachovia Bank, N.A. Demand Deposit Account are honored, I agree that Wachovia Bank, N.A. may charge such Advances to my Account and that such Advances shall be in increments of $100.00.

I agree that any Prime Equity Line Checks or Cards that you supply to me are your property and must be returned to you immediately upon demand if I am in Default of this Agreement or my Advance privileges are terminated or suspended in accordance with the terms of this Agreement.

### MAXIMUM CREDIT LIMIT
My Maximum Credit Limit is indicated above. I agree never to allow the Outstanding Balance due on my Account to exceed the Maximum Credit Limit. I also agree that you are not obligated to pay any Advance or other charge against my Account that would make my Account Outstanding Balance exceed my Maximum Credit Limit. I agree to immediately repay, upon demand, any Outstanding Balance that exceeds the Maximum Credit Limit established hereunder. Any increases in my Maximum Credit Limit I request will require that a new application be approved in accordance with your then applicable underwriting standards and I must sign any additional agreements that in your opinion are necessary to secure your interest.

### DRAW PERIOD
Except as provided herein and unless terminated earlier in accordance with the terms of this Agreement, I may obtain Advances under the terms of this Agreement for twenty (20) years from the Date of Agreement ("Draw Period"). For Accounts secured by property located in Connecticut, the Draw Period is ten (10) years from the Date of Agreement.

### OBLIGATION TO LEND
You are absolutely obligated under the terms of this Agreement to make Advances not to exceed, at any one time in the aggregate, the amount indicated as the Maximum Credit Limit and I agree to repay any Advances under the terms of this Agreement. Your obligation to make Advances to me under this Agreement ends when the right to obtain Advances terminates at the end of the Draw Period or when such Advance privileges are suspended or terminated in accordance with the terms of this Agreement.

### FINANCE CHARGE ON MY ACCOUNT BALANCE

(a) My Account has a monthly billing cycle. A Finance Charge computed on a monthly periodic rate will be imposed, if at the end of any day of the billing cycle, there is a balance owing on my Account. The monthly periodic rate for an initial Advance, if any, made by you will begin to accrue on the date of this Agreement. The monthly periodic rate for any Advance other than an initial Advance will begin to accrue on the Transaction Date as indicated on my billing statement.

(b) You will figure the Finance Charge on my Account by applying the monthly periodic rate to the "average daily balance" owing on my Account (including current transactions). To calculate the "average daily balance" you will take the beginning balance of my Account each day, add any new Advances and Fees charged to the Account pursuant to the terms of this Agreement, and subtract any payments or credits. This gives you the daily balance. Then, you will add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives you the "average daily balance."

(c) The Finance Charge imposed during a billing cycle will be determined by applying the monthly periodic rate that is 1/12 of the corresponding **ANNUAL PERCENTAGE RATE** to the average daily balance. The **ANNUAL PERCENTAGE RATE** and monthly periodic rate are variable rates and are subject to change on the first day of each billing cycle, if there was a prior change in the Index, which is the Prime Rate as regularly published in the Eastern edition of *The Wall Street Journal* ("Prime Rate").

(d) If the Prime Rate becomes unavailable, you will select an Index which is based on a historical movement substantially similar to the original Index and the new index and margin will result in an **ANNUAL PERCENTAGE RATE** substantially similar to the rate in effect at the time the Prime Rate becomes unavailable. You will give me notice of this change.

(e) The corresponding **ANNUAL PERCENTAGE RATE** is effective as of the 1st day of the calendar month in which you receive your Statement and is based on the Prime Rate as published in the Eastern edition of *The Wall Street Journal* on the 25th day of the prior calendar month plus a Margin of ___0.00___%. If more than one Prime Rate is published on the 25th day of the prior calendar month, you will use the higher rate as the Prime Rate. If the Prime Rate is not published on the 25th day of the prior calendar month, the Index will be the Prime Rate published on the last business day prior to the 25th.

(f) During the first twelve months of the Agreement, as measured from the date of the Agreement ("Initial Period"), if I take Advances totaling at least $5,000.00, the **ANNUAL PERCENTAGE RATE** will be discounted for the remaining months left in the Initial Period. During the Initial Period, the **ANNUAL PERCENTAGE RATE** will equal the Index (WSJ Prime Rate) plus the discounted Margin which is ___0.00___%. The **ANNUAL PERCENTAGE RATE** for the Initial Period is not based on the Margin that is used to make later rate adjustments. After the Initial Period, the **ANNUAL PERCENTAGE RATE** for the remaining term of the Agreement will be determined in accordance with subsection (e) above.

(g) Assuming that the discounted **ANNUAL PERCENTAGE RATE** is not in effect, the initial monthly periodic rate of ___0.333___% will apply to my average daily balance during my first billing cycle and the initial corresponding **ANNUAL PERCENTAGE RATE** will be ___4.000___%. An increase in the **ANNUAL PERCENTAGE RATE** and monthly periodic rate will result in increased Finance Charges and minimum payment amounts. The corresponding **ANNUAL PERCENTAGE RATE** for each billing cycle will be shown on my billing statement for that cycle. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

(h) The maximum **ANNUAL PERCENTAGE RATE** will never exceed eighteen percent (18%). In North Carolina, the maximum **ANNUAL PERCENTAGE RATE** will never exceed sixteen percent (16%).

**Other Charges.** In addition to the **FINANCE CHARGE** which will be added to my Account each billing cycle, I will pay the following real estate closing and security filing fees:

| "X" = Wachovia Bank, N.A. Pays Fee | | "X" = Wachovia Bank, N.A. Pays Fee | |
|---|---|---|---|
| Survey | $_____ ___ | Georgia Mortgage Fee | $_____ ___ |
| Title Examination | $_____ ___ | Settlement Fee | $_____ ___ |
| Title Insurance | $_____ ___ | Points | $_____ ___ |
| Recording Fee | $ 70.00 ___ | Commitment Fee | $_____ ___ |
| Appraisal Fee | $_____ ___ | Broker Fee | $_____ ___ |
| Flood Certification Fee | $ 11.50 ___ | Additional Settlement Fee | $_____ ___ |
| Intangible Tax | $_____ ___ | _____ | $_____ ___ |
| Document Stamp Tax | $_____ ___ | **TOTAL** | $ 81.50 ___ |

**WACHOVIA BANK, N.A. FEES PAID** $_____    **CUSTOMER FEES PAID** $ 81.50

☐ **Closing Cost Repayment Option.** If checked, I request that you pay the Other Charges indicated with an "X" above for me. I will pay the remaining Other Charges not so indicated. In consideration of your payment of the Other Charges indicated above I agree to reimburse you for the Other Charges that you have paid on my behalf, in the event I pay the entire Outstanding Balance and close this Account on or before one calendar year after the opening date of this Account. If I pay the entire Outstanding Balance and close this Account after one year, but on or before two calendar years after the opening date of this Account, I agree to reimburse you fifty percent (50%) of the amount of closing costs you paid for me. I understand that I may pay my entire Outstanding Balance at any time without having to reimburse you for the closing costs as long as my Account remains open.

**Statement.** If I have an Outstanding Balance or a credit balance in excess of $1.00 or if there is any Finance Charge imposed during a billing cycle, you will send me a Statement. I promise to pay you in accordance with the terms of this Agreement in United States Dollars drawn on an institution located in the United States. I understand I am prohibited from using an Advance to make my payments on this Account. I agree to be responsible for any fees or costs associated with the processing of my payments on my Account should I use a method of payment that results in extra costs or fees being assessed to you.

**Payment Schedule.** During the Draw Period, I agree to pay the minimum monthly payment not later than the payment due date shown on my Statement as follows:

☒ Option A: I will make a minimum monthly payment equal to the greater of the Finance Charge on the outstanding Advances plus accrued but unpaid Fees or $50.00.
☐ Option B: I will make a minimum monthly payment of the greater of 1.5% of the Outstanding Balance shown on my Statement or $50.00.

Upon expiration of the Draw Period, I will make a minimum monthly payment of the greater of 2% of the Outstanding Balance shown on my Statement or $50.00 until the entire Outstanding Balance is paid in full.

If at any time, the Outstanding Balance is less than $50.00, the minimum monthly payment will be the Outstanding Balance.

For purposes of this Agreement, the term "Outstanding Balance" includes all unpaid Advances, accrued but unpaid Finance Charges and accrued but unpaid Fees permitted to be charged to my Account under the terms of this Agreement or the Security Instrument.

**Application of Payments.** Unless otherwise prohibited by applicable law, payments will be applied in the following order: First, to the accrued but unpaid promotional Finance Charges due; next to non-promotional Finance Charges due; next to any Fees that have been charged in accordance with the terms of this Agreement. The remainder of any payment will be applied first to any unpaid promotional Advances and then to any non-promotional Advances. Promotional Advances

and Finance Charges refer to offers to use my Account on special terms that you may make to me from time to time, you will provide the terms of any promotional transaction or promotional Finance Charge at the time that you make the offer available. I understand that making more than the minimum payment may not advance my next payment due date.

**Minimum Monthly Payment Change.** Subject to your approval, during the Draw Period, I agree that I may change my minimum payment option to any option listed above upon written notice of my request to change my minimum payment option.

> PAYMENT IN FULL. I AGREE THAT THE NOTE HOLDER MAY ACCEPT PAYMENTS MARKED
> "PAID IN FULL" WITHOUT ANY LOSS OF THE NOTE HOLDER'S RIGHTS UNDER THIS NOTE
> UNLESS I SEND THEM FOR SPECIAL HANDLING TO WACHOVIA BANK, N.A. EQUITY LINE
> SERVICES, VA 0343, PO BOX 13327, ROANOKE, VA 24040.

**Late Fee.** I agree that any Late Fee imposed by you will be charged to my Account.

If this Agreement is governed by New York law and all of a minimum monthly payment is not received within fifteen (15) days of the due date provided on my Statement, you will impose a Late Fee of two percent (2%) of the amount of the minimum monthly payment.

If this Agreement is governed by North Carolina law and all of a minimum monthly payment is not received within fifteen (15) days of the due date provided on my Statement, you will impose a Late Fee of four percent (4%) of the amount of the minimum monthly payment.

If this Agreement is governed by South Carolina law and is secured by a subordinate lien on real property and all of a minimum monthly payment is not received within ten (10) days of the due date provided on my Statement, you will impose a Late Fee of the lesser of $13.50 or five percent (5%) of the amount of the minimum monthly payment but not less than $5.40. Otherwise, if all of a minimum monthly payment is not received within ten (10) days of the due date provided on my Statement, you will impose a Late Fee of five percent (5%) of the amount of the minimum monthly payment.

If this Agreement is governed by a law other than those listed in this Section (above) and all of a minimum monthly payment is not received within ten (10) days of the due date provided on my Statement, you will impose a Late Fee of five percent (5%) of the amount of the minimum monthly payment.

**Return Items Fee.** If I make a payment to my Account by check or draft and the check or draft is returned unpaid for any reason, I agree to pay a charge of $20.00 for each returned check or draft. If this Agreement is governed by Maryland law and I make a payment to my Account by check or draft and the check or draft is returned unpaid for any reason, I agree to pay a charge of $15.00 for each returned check or draft. I agree that this fee will be charged to my Account.

**Stop Payment Fee.** If I request you to stop payment on an Advance made with a Prime Equity Line Check, to the extent not prohibited by applicable law, I agree to pay your scheduled fee for such service. I will be notified of the amount of such fee at the time that such action is requested. I agree that this fee will be charged to my Account.

**Administrative/Servicing Fees.** I agree that, if after closing, I request other services related to servicing or administering my Account for which you have a scheduled charge, to the extent not prohibited by applicable law, I will pay you the then current fee for such services or request if you agree to perform such services or request. I will be notified of the amount of the fee at the time that such action is requested. I agree that any such fees will be charged to my Account.

**Agreement Secured by Security Instrument.** In addition to the protections given to you under this Agreement, a Security Instrument on real property (the "Property") described in the Security Instrument and dated the same date as this Agreement, protects you from possible losses which might result if I do not keep the promises which I make in this Agreement. The Security Instrument describes how and under what conditions I may also be required to make immediate payment in full of all amounts I owe under this Agreement.

**Change of Terms of This Agreement.** In addition to other rights you may have under the terms of this Agreement, you may change the terms and conditions of this Agreement when any of the following events shall occur:
  (1) if the index and margin used with this Account are no longer available;
  (2) if you make a change that I specifically agree to in writing;
  (3) if you make a change that will unequivocally benefit me throughout the remainder of the term of this Agreement; or
  (4) if you make any insignificant change in the terms of this Agreement.

**Suspension and/or Reduction of Credit Limit.** I agree that you may prohibit additional Advances or reduce the Maximum Credit Limit when any of the following events shall occur:
  (1) if the value of the Property that secures this Agreement declines significantly below the Property's appraised value during the time of this Agreement;
  (2) if you reasonably believe I will be unable to fulfill the repayment obligations under this Agreement due to a material change in my financial circumstances;
  (3) if I am in default of any material obligations under this Agreement, such material obligations include, but are not limited to, all of my promises in this Agreement regarding the payment of money to you and the preservation of your rights in the Property;
  (4) if action by a governmental body does not allow you to impose the **ANNUAL PERCENTAGE RATE** currently applicable to this Agreement;
  (5) if action by a governmental body adversely affects the priority of your Security Instrument to the extent that the value of the security interest is less than 120 percent of the amount of my Maximum Credit Limit;
  (6) if you are notified by a governmental agency that regulates your lending activities that continuing Advances constitutes an unsafe and unsound practice;
  (7) if during any period in which the **ANNUAL PERCENTAGE RATE** corresponding to the monthly periodic rate reaches the maximum interest rate allowed under this Agreement. Provided I am in compliance with the other terms of this Agreement, I understand you will reinstate credit privileges if the **ANNUAL PERCENTAGE RATE** declines below the maximum **ANNUAL PERCENTAGE RATE**; or
  (8) if I request that you suspend any Advance or reduce the Maximum Credit Limit.

**Reinstatement of Advance Privileges.** Except as provided for in this Agreement, I understand that if my Advance privileges are suspended or my Maximum Credit Limit is reduced, it is my responsibility to request reinstatement of my Advance privileges that have been suspended. If I request reinstatement of my Advance Privileges, I further understand that I may be required to pay for an appraisal of the Property to determine if the value has changed.

If you suspend Advances or reduce the Maximum Credit Limit, I understand you will mail or deliver written notice of your action no later than three business days after the action and that such notice will contain the specific reason for the action.

**Default/Termination.** I will be in default if any of the following events shall occur:
    (1) if I fail to make my payments when they are due;
    (2) if I have engaged in fraud or material misrepresentation in connection with my Account;
    (3) if my action or inaction adversely affects the Property or your rights in the Property or I am in breach of any term
       of the Security Instrument; or
    (4) if I breach any term or this Agreement.

If I am in Default under the terms of this Agreement, you may, at your option and in your sole discretion, take the following action:
    (1) terminate my Advance privileges and demand the Outstanding Balance to be due and payable immediately in full in
       a single payment, with interest due on the Balance at the **ANNUAL PERCENTAGE RATE** as provided for in this
       Agreement until paid; or
    (2) temporarily or permanently prohibit additional Advances or reduce the Maximum Credit Limit without demanding
       payment in full.

If you do not immediately terminate the Advance privileges and demand repayment of the Outstanding Balance, such action shall not constitute a waiver of your right to subsequently terminate the Account or demand repayment of the Outstanding Balance at a later time, if the event of Default still exists or another event of Default occurs at that time.

In the event of Default, if I do not immediately pay the Outstanding Balance and if this obligation is referred to an attorney-at-law for collection, who is not a salaried employee of you, to the extent not prohibited by applicable law, you will have the right to collect attorney fees not exceeding fifteen percent (15%) of the Outstanding Balance along with court costs and expenses. Any default of this Agreement will also constitute an event of Default of the Security Instrument securing my performance of the obligations set forth in this Agreement. Upon Default, you may proceed to enforce the terms of this Agreement or enforce any rights that you may have under the Security Instrument.

**"DEFAULT IN THE PAYMENT OF THE LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THIS LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS LOAN. IF YOU HAVE THIS RIGHT, THE LENDER IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT."**

**Termination by Less than All Borrowers.** If one or more persons are liable under the terms of this Agreement and less than all of said persons request in writing that future Advances be terminated or temporarily suspended hereunder, you will block and otherwise suspend further Advance privileges. Upon receipt of such notice from one or all of us, you will provide written notice to all Borrowers that the Advance privileges have been suspended. I understand that said Advance privileges will not be reinstated by you until you receive a written request from all persons liable on this Account requesting reinstatement of the Advance privileges. I further agree that any request to grant reinstatement will be made at the sole discretion of you and in accordance with your policies in effect at the time such request is made.

I understand that during the time of any such suspension or termination that I must continue to abide by the terms of the Agreement including, but not limited to the Payment Schedule.

**Voluntary Termination.** I can cancel my Account at any time by destroying all of my unused Prime Equity Line Checks and any Card Access Devices that may have been issued in connection with my Account and sending you a signed letter requesting that you cancel my Account. I understand that my obligations under this Agreement and any changes made under it prior to cancellation will continue to apply until I have completely paid the Outstanding Balance on the Account.

**Required Property and Flood Insurance.** I agree to purchase and to continue to maintain property insurance (and flood insurance if so required) on the secured Property in an amount not less than the entire Outstanding Balance for all prior and current obligations secured by my Property or in such an amount satisfactory to you. I understand I may purchase required property and flood insurance from anyone I choose who is acceptable to you. I agree that in the event I am required to purchase property and/or flood insurance and fail to do so that you may purchase said insurance on my behalf and add the amount of the premium to my then Outstanding Balance. I agree that you have an irrevocable power of attorney to file proofs of loss or other insurance claims and anything else to obtain insurance proceeds in my name.

**Assignment/Transfer of Account.** I cannot transfer or assign my Account or this Agreement to any other person, however, I agree you can assign or transfer this Agreement and the Security Instrument securing this Agreement.

**Change of Address.** I will advise you promptly if I change my mailing address or if I sell the Property securing this Account.

**Notices.** All written notices and statements from you to me will be considered given when placed in the United States mail, postage paid, and addressed to me at my current address as it appears in your records. If this is a joint Account, written notice to one person is notice to all persons.

**Removal of Security Interest.** At any time when the Outstanding Balance secured by the Security Instrument is zero, you shall, at my written request, execute a Satisfaction and provide me with a recorded copy. Absent my request, the Security Instrument will remain in full force and effect until the Draw Period has expired <u>and</u> the Outstanding Balance is paid in full.

Governing Law. I agree that this Agreement shall be governed by and interpreted entirely under the law of the State where the Property securing this Agreement is located and applicable federal law. If the Property securing the Agreement is located in Maryland, this Agreement is governed by MD Code Ann., Commercial Law §12-1001 *et. seq.* and applicable federal law.

**Other Provisions.** Each of us who signed this Agreement is individually and jointly obligated for all payments due under this Agreement. If you request, I will give you any information needed to reevaluate my Account or my creditworthiness. You may, at any time, seek information about my financial condition from others including but not limited to obtaining a consumer report from a Consumer Reporting Agency. You may use the information obtained from a Consumer Reporting Agency to market additional products or services to me. In the event that the amount of interest on my Account exceeds the maximum permitted by law, you agree to repay me upon demand the amount paid which exceeds the maximum interest rate, or at your option, to reduce the then Outstanding Balance by the excess amount of interest. This Agreement constitutes the entire Agreement between the parties. If any part of this Agreement is not valid, all other parts will remain enforceable. I understand I should consult a tax advisor regarding the deductibility of interest and charges for my Account.

**CAUTION – IT IS IMPORTANT THAT YOU READ ALL PAGES OF THIS AGREEMENT BEFORE YOU SIGN IT. DO NOT SIGN THIS AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**

By signing below, I agree to all of the above terms and certify that I received a completed copy of this Agreement.

Borrower
CARLOS   TRUFFIN

Borrower
SHARON   TRUFFIN

Borrower

Borrower

# MY BILLING RIGHTS

## I SHOULD KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

**I SHOULD NOTIFY YOU IN CASE OF ERRORS OR QUESTIONS ABOUT MY STATEMENT.**

If I think my Statement is wrong, or if I need more information about a transaction on my Statement, I should write you on a separate sheet at the address listed on my Statement. I should write you as soon as possible. You must hear from me no later than 60 days after you sent me the first statement on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

* My full name and PEL Account Number.

* The dollar amount of the suspected error.

* I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I should describe the item I am not sure about.

**MY RIGHTS AND YOUR RESPONSIBILITIES AFTER YOU RECEIVE MY WRITTEN NOTICE.**

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the Statement was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my Statement that are not in question.

If you find that you made a mistake on my Statement, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my Statement. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my Statement was correct.



**Comptroller of the Currency**
**Administrator of National Banks**

Washington, DC 20219

March 20, 2010

Mr. James E. Hanson
Senior Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:   Applications to merge Wachovia Bank, National Association, Charlotte, North Carolina
      and Wachovia Bank of Delaware, National Association, Wilmington, Delaware with and
      into Wells Fargo Bank, National Association, Sioux Falls, South Dakota
      Application Control Number: 2009-ML-02-0012

Dear Mr. Hanson:

This letter is the official acknowledgement, authorization and certification by the Office of the
Comptroller of the Currency (OCC) that effective March 20, 2010 Wachovia Bank, National
Association, Charlotte, North Carolina and Wachovia Bank of Delaware, National Association,
Wilmington, Delaware merged with and into Wells Fargo Bank, National Association, Sioux
Falls, South Dakota, under the title of the latter.  As result of the merger, the OCC has
renumbered the charter number of Wells Fargo Bank, National Association (the resulting bank)
from charter number 1741 to charter number 1.

This letter is also the official authorization for Wells Fargo Bank, National Association to
operate the former main office of Wachovia Bank of Delaware, National Association and the
branch offices of Wachovia Bank, National Association and Wachovia Bank of Delaware,
National Association as branches of Wells Fargo Bank, National Association.  A list of branches
for the resulting bank will be sent under separate cover.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by e-mail at
Stephen.Lybarger@occ.treas.gov.  Please reference the application control number in any
correspondence.

Sincerely,

*Stephen A. Lybarger*

Stephen A. Lybarger
Large Bank Licensing Lead Expert



**WELLS FARGO**

Step Rate Modification Program
## Modification Agreement – Permanent Line of Credit

| Borrower's Name:<br>CARLOS TRUFFIN | Bank Name:<br>WELLS FARGO BANK, N.A. (the "Bank") |
|---|---|
| Borrower's Name:<br>SHARON TRUFFIN | Date of this Modification Agreement:<br>June 11, 2015 |
| Borrower's Name: | Account Number |
| Borrower's Name: | Property Address:<br>106 SUMMIT AVE BLOOMFIELD, NJ 07003 |

## 1. RECITALS

(a)  In this Modification Agreement ("Agreement"), "I," "me," and "my" refer to each borrower who signs this Agreement. "You," "Your," and "Bank" refer to Wells Fargo Bank, N.A.

(b)  This Agreement modifies my line of credit agreement dated August 21, 2003 in the original principal amount of $145,000.00, made payable to Bank or its predecessor-in-interest (the "Note"). The Note is secured by a mortgage or deed of trust or other security document (the "Security Instrument") dated the same date as the Note, secured by my property above (the "Property"). The Security Instrument and any other agreements which I may have signed to secure payment of my Note are also changed to the extent necessary to reflect the changes in this Agreement. Finally, this Agreement amends and supersedes the terms of any modification, forbearance and/or trial period plan or workout plan previously entered into, if any, on this Account.

(c)  The "Effective Date" of this Agreement shall be the date that this Agreement, signed by all Borrowers, is received by the Bank. I understand that if the executed Agreement is not received by the Bank within fifteen days of the Date of this Agreement shown above, this Agreement shall be void, and none of its provisions shall apply.

## 2. CURRENT TERMS

The current terms of my Note, as of the date of this Agreement shown above, are:

**Account Ending in 1998**

- Outstanding Principal Balance
- Monthly Payment
  - Payment consists of Interest Only
- Interest Rate

- Monthly Due Date
- Maturity Date

$137,053.10

$371.18 *variable*

Variable currently 3.250% per year
with a ceiling of 18.000%
the 12th day of each month
August 20, 2043

## 3. MODIFIED TERMS

(a)  I have requested, and the Bank has agreed, to modify my Note as described in this Agreement.

(b)  I agree that I will comply with and be bound by all covenants, agreements, and requirements of my original Account documents, including my Note and Security Instrument, except to the extent that such documents are modified by the Agreement. I certify that the Account documents are composed of duly valid, binding agreements, enforceable in accordance with their terms. I understand that nothing in the Agreement shall be understood or constructed to be a satisfaction or release in whole or in part of the obligations contained in the Account documents as modified by this Agreement. If my Account is currently in foreclosure, the Bank agrees to suspend or cancel the foreclosure action, so long as the terms and conditions of this Agreement are met.



**EQUAL HOUSING LENDER**



**WELLS FARGO**

Step Rate Modification Program
**Modification Agreement – Permanent Line of Credit**

(c) I agree that each of the balances set forth above (if more than one is shown) shall be consolidated into one modified account and the new modified terms of my Note as set forth below in this Agreement shall apply to the entire consolidated balance.

(d) The new terms of my Note pursuant to the terms of this Agreement are as follows:

- New Principal Balance        $137,053.10
- Maturity Date (the "New Maturity Date")        July 12, 2047
- Interest rate, monthly payment and monthly due dates are outlined below.

(e) My first payment under the new terms above will be due on July 12, 2015.

(f) I understand that after 60 months from the execution of this Agreement, on June 13, 2020 my interest rate will increase from 3.250% to 4.250% as set forth in the table below, and that my interest rate will thereafter increase periodically on each "Rate Effective Date" shown in the table below, to the "Interest Rate" that corresponds to each "Rate Effective Date" shown in the table below.

(g) My modified interest rate and payment schedule is as follows:

| Payment Type | Rate Effective Date | Interest Rate | Number of Payments | Monthly Payment | First Payment Due |
|---|---|---|---|---|---|
| Amortizing | 03/09/2015 | 3.250% | 60 | $578.70 | 07/12/2015 |
| Amortizing | 06/13/2020 | 4.250% | 12 | $647.89 | 07/12/2020 |
| Amortizing | 06/13/2021 | 5.250% | 12 | $718.99 | 07/12/2021 |
| Amortizing | 06/13/2022 | 5.800% | 301 | $758.45 | 07/12/2022 |

(h) I understand that the Monthly Payment consists only of principal and interest. The final payment will be the amount needed to repay the outstanding balance under the new terms shown above in full, including the Deferred Principal Amount portion of the outstanding balance. This assumes that all payments will be made on their due dates. If my payments are not consistently made when due, my new monthly Payment may not fully repay the amount owed over the term of the Note and my final payment may be higher.

(i) The Bank has agreed to waive unpaid interest accrued to the Date of this Agreement, and any late charges accrued to the Date of this Agreement that I may owe other than principal. The Bank also waives any penalty for full or partial prepayment of the Account, if present in the original Note.

(j) Currently I have a past due amount on my Account. The Bank and I agree that if the terms of this Agreement are followed, my Account will not be considered past due from the date of this Agreement on a go-forward basis.

(k) If I make a partial prepayment of principal that is less than the Interest Bearing Principal Balance, the Bank will apply the partial prepayment to the Interest Bearing Principal Balance. If I make a partial prepayment of principal that is equal to or greater than the Interest Bearing Principal Balance, the Bank will apply the partial prepayment first to any remaining Deferred Principal Amount before applying such partial prepayment to other amounts due under this Agreement or the Note and Security Instrument.

**4. INTEREST RATE DISCOUNTS REPLACED**
The reduced interest rate replaces any discounts, including for automatic payments and rate buy-downs, I may previously have received, whether or not that discount is specified in this section.

**5. SALE OF PROPERTY**
Upon sale, transfer, hypothecation, assignment, or encumbrance, whether voluntary, involuntary, or by operation of law, of all or any part of the Property or any interest therein, then at its sole option, the Bank may, by written notice declare all obligations secured hereby immediately due and payable, except to the extent that such acceleration is prohibited by law

EQUAL HOUSING LENDER


**WELLS FARGO**

Step Rate Modification Program
## Modification Agreement – Permanent Line of Credit

### 6. BORROWER CERTIFICATION
I attest, under penalty of perjury, all documents and information that I provided to the Bank are true and correct. I agree to execute any documents, including corrected documents and replacements for lost documents, necessary to consummate the transactions contemplated in the Agreement, within fifteen days of the Bank's request.

### 7. TERMINATION OF FUTURE ADVANCES
I agree and consent to the permanent termination of my ability to draw additional amounts on the line of credit under the terms of my Note.

### 8. HOME ASSET MANAGEMENT ACCOUNT ("HAMA Accounts")
I agree that if the Account evidenced by my Note is a HAMA account, I consent to the permanent termination of the following features of my Account
- Increases and/or reviews of the credit line based upon increases in the property value.
- Increases and/or reviews of the credit line based upon the amount of principal paid on my first mortgage.

### 9. OPTIONAL PAYMENT PROTECTION CANCELLATION
If I purchased optional credit insurance or an optional debt cancellation plan in connection with the credit agreement, and if such insurance or plan was not previously cancelled, I have requested that such credit insurance or debt cancellation plan be cancelled.  Credit insurance means credit life, disability, and/or involuntary unemployment insurance. Debt Cancellation means the Loan Assurance Plan.

### 10. TITLE INSURANCE
I agree that this Agreement will be null and void if the Bank is unable to receive all necessary title endorsement(s), title insurance product(s) and/or subordination agreement(s).

### 11. NOTICE TO CONSUMER
**This is a Consumer Credit Transaction.** I understand that:
- I should not sign this Agreement before I read the entire document, even if otherwise advised.
- I should not sign this Agreement if it contains any blank spaces.
- I am entitled to an exact copy of this Agreement and any other agreements I sign.
- If included, the undersigned Borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.


EQUAL HOUSING LENDER



Step Rate Modification Program
**Modification Agreement – Permanent Line of Credit**

**BORROWER SIGNATURE**

I received and read a completed copy of this Agreement before I signed it. I agree to all its terms. ALL BORROWERS MUST SIGN THIS AGREEMENT AND RETURN <u>ALL PAGES</u> OF THIS DOCUMENT IN ORDER FOR IT TO BE EFFECTIVE.

_____     06/18/2015
BORROWER CARLOS TRUFFIN                              DATE

_____     6/18/2015
BORROWER SHARON TRUFFIN                              DATE

_____     _____
BORROWER                                            DATE

_____     _____
BORROWER                                            DATE

WELLS FARGO BANK, N.A.
Authorized By: _____      06|25|15
Signature:                                          Date
Title:        **Dhara P. Parekh**
              Vice President Loan Documentation

Case 1:19-cv-22263-JMS Claim 25-1 Filed 12/27/19 Desc Main Document Page 23 of 39

**Prepared By/Return To:**
LINDA CUNNINGHAM
Wachovia Bank, National Association
Retail Credit Servicing
P.O. Box 50010
Roanoke, VA  24022

**Parcel No:**
734-8



Instr#   855695                    Carole A. Graves
Recorded/Filed  LS   2      Essex County Register
09/20/2003  14:16:2  Bk 9154 Pg 888 #Pge   5    TR

# OPEN-END MORTGAGE

THIS MORTGAGE is made this day ___21  August, 2003_____ between the Mortgagor,
SHARON TRUFFIN
CARLOS TRUFFIN

(herein "Borrower"), and the Mortgagee, Wachovia Bank, National Association, a national banking association organized and existing under the laws of the United States of America, whose address is Wachovia Bank, National Association, 301 South College Street, NC 0630, Charlotte, North Carolina 28280-0630 (herein "Lender").

The Lender has made a loan to Borrower the maximum indebtedness at any one time shall not exceed U.S.$_145000.00_____ which loan is an open-end line of credit as evidenced by Borrower's Prime Equity Line of Credit Agreement and Disclosure Statement dated ___08/21/03_____ and extensions, modifications and renewals thereof (herein "Note") which provides for obligatory advances of all or part of the loan proceeds from time to time, subject to provisions in the Note.  The entire indebtedness evidenced by the Note, if not sooner paid, will be due and payable on ___08/20/43_____.

THIS MORTGAGE secures a Note that provides for changes in the interest rate, as more particularly described in said Note.  In case of a conflict between the Note and this Mortgage governing the terms of the remedies of default or termination of advances, the terms of the Note shall control.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender the following described Property located in the County of __ESSEX_____, State of New Jersey:

DEED DATE:02/08/94 RECORDED: 02/09/94 BOOK/INST: 5297 PAGE: 419
PARCEL/TAX ID #:734-8                    TWP/BORO:TOWNSHIP  OF BLOOMFIELD
                    BRT:                    WARD:
        LOT:8            BLOCK: 734            MAP PLAT:

which has the address of _106  SUMMIT  AVE_____
                    BLOOMFIELD NJ   07003_____
and Parcel No._734-8_____ (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances and rents all of which shall be deemed to be and remain a part of the Property covered by this Mortgage; and all of the foregoing, together with said Property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

**Any Rider ("Rider") attached hereto and executed of even date is incorporated herein and the covenants and agreements of the Rider shall amend and supplement the covenants and agreements of this Mortgage, as if the Rider were a part hereof.**

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record.  Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

**1.   Obligation to Lend.**  Lender is absolutely obligated under the terms of the Note to make advances not to exceed, at any one time in the aggregate, the amount stated in the Note and Borrower has agreed to repay any advances under the terms of the Note.  Lender's absolute obligation to make advances to

Borrower under the Note ends when Lender terminates the right to make advances and demands repayment of the outstanding obligation or prohibits additional extensions of credit under the Note or this Mortgage. Nevertheless, Lender may waive the right to terminate or prohibit additional advances. If Lender does not terminate or prohibit additional advances, Lender remains obligated to make advances to Borrower under the terms of the Note. However, that waiver does not bind Lender if the same or a different event occurs or is continuing at a later time.

**2. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note. This Mortgage secures payment of said Note according to its terms, which are incorporated herein by reference.

**3. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations, under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**4. Hazard Insurance.** a) Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including but not limited to floods, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with section 6.

b) All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

c) Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Mortgage, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when the notice is given.

d) Except as provided in subsection 4(e) below, should partial or complete destruction or damage occur to the Property, Borrower hereby agrees that any and all instruments evidencing insurance proceeds received by Lender as a result of said damage or destruction, shall be placed in a non-interest bearing escrow account with Lender. At Lender's discretion, Lender may release some or all of the proceeds from escrow after Borrower presents Lender with a receipt(s), invoice(s), written estimates(s) or other document(s) acceptable to Lender which relates to the repair and/or improvements of the Property necessary as a result of said damage and/or destruction. Absent an agreement to the contrary, Lender shall not be required to pay Borrower any interest on the proceeds held in the escrow account. Any amounts remaining in the account after all repairs and/or improvements have been made to Lender's satisfaction, shall be applied to the sums secured by this Mortgage. Borrower further agrees to cooperate with Lender by endorsing all checks, drafts and/or other instruments evidencing insurance proceeds and any necessary documents. Should Borrower fail to provide any required endorsement and/or execution within 30 days after Lender sends Borrower notice that Lender has received an instrument evidencing insurance proceeds, or document(s) requiring Borrower's signature, Borrower hereby authorizes Lender to endorse said instrument and/or document(s) on Borrower's behalf, and collect and apply said proceeds at Lender's option, either to restoration or repair of the Property or to sums secured by this Mortgage. It is not the intention of either party that this escrow provision, and/or Lender's endorsement or execution of an instrument(s) and/or document(s) on behalf of Borrower create a fiduciary or agency relationship between Lender and Borrower.

e) Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in section 2 or change the amount of the payments. If under section 16 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Mortgage.

**5. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the Declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**6. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such

appearances, disburse such sums, including reasonable attorneys' fees, and take such actions as is necessary to protect Lender's interest.

Any amounts disbursed by Lender pursuant to this section 6, with interest thereon from the date of disbursal, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this section 6 shall require Lender to incur any expense or take any action hereunder.

**7.  Inspection.**  Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**8.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**9.  Borrower Not Released; Forbearance By Lender Not a Waiver.**  Borrower shall remain liable for full payment of the principal and interest on the Note (or any advancement or obligation) secured hereby, notwithstanding any of the following: (a) the sale of all or a part of the premises; (b) the assumption by another party of Borrower's obligations hereunder; (c) the forbearance or extension of time for payment or performance of any obligation hereunder, whether granted to Borrower or a subsequent owner of the Property; and (d) the release of all or any part of the premises securing said obligations or the release of any party who assumes payment of the same.  None of the foregoing shall in any way affect the full force and effect of the lien of this Mortgage or impair Lender's right to a deficiency judgment (in the event of foreclosure) against Borrower or any party assuming the obligations hereunder, to the extent permitted by applicable law.  Any forbearance by Lender in exercising any right or remedy hereunder or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**10.  Successors and Assigns Bound; Joint and Several Liability; Co-signers.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Mortgage but does not execute the Note (a "co-signer"): (a) is co-signing this Mortgage only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Mortgage; (b) is not personally obligated to pay the sums secured by this Mortgage; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Mortgage or the Note without the co-signer's consent.

Subject to the provisions of section 15, any Successor in Interest of Borrower who assumes Borrower's obligations under this Mortgage in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Mortgage.  Borrower shall not be released from Borrower's obligations and liability under this Mortgage unless Lender agrees to such release in writing.  The covenants and agreements of this Mortgage shall bind and benefit the successors and assigns of Lender.

**11.  Notice.**  Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower or the current owner at the Property Address or at such other address as Borrower may designate in writing by notice to Lender as provided herein, and any other persons personally liable on the Note as their names and addresses appear in Lender's records at the time of giving notice and (b) any notice to Lender shall be given by first class mail to Lender's address at Wachovia Bank, National Association, Retail Credit Servicing, P.O. Box 50010, Roanoke, VA  24022 or to such other address as Lender may designate by notice to Borrower as provided herein.  Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**12.  Governing Law; Severability.**  The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located.  The foregoing sentence shall not limit the applicability of federal law to this Mortgage.  In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflicts shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable.  As used herein "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**13.  Borrower's Copy.**  Borrower shall be furnished a conformed copy of the Note, this Mortgage and Rider(s) at the time of execution or after recordation hereof.

**14.  Rehabilitation Loan Agreement.**  Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair or other loan agreement which Borrower enters into with Lender.  Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**15.  Transfer of the Property or a Beneficial Interest in Borrower; Assumption.**  As used in this section 15, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written

consent, Lender may require immediate payment in full of all sums secured by this Mortgage.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with section 11 within which Borrower must pay all sums secured by this Mortgage.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies by this Mortgage without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows:

**16. Default; Acceleration; Remedies.**  Upon Borrower's breach of any covenant or agreement of Borrower in this entire Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without demand or notice, notice of the exercise of such option being hereby expressly waived.  Lender may invoke the power of sale hereby granted.  Lender shall have the right to enter upon and take possession of the Property hereby conveyed and after or without taking such possession shall have the right to sell the same at public auction for cash, after first giving notice of the time, place and terms of such sale by publication once a week for three consecutive weeks prior to said sale, in some newspaper published in said county, and upon payment of the purchase money, Lender, or owner of the debt and this Mortgage, or auctioneer, shall execute to the purchaser for and in the name of Borrowers, a good and sufficient deed to the Property sold.  Lender shall apply the proceeds of said sale: first, to the expense of advertising, selling and conveying said Property, including a reasonable attorney's fee; second, to the payment of any amounts that may have been expended or that may then be necessary to expend in paying insurance, taxes and other encumbrances, with interest thereon; third, to the payment in full of the principal indebtedness and interest thereon, whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the date of said sale; and fourth, the balance, if any, shall be paid over to said Borrowers or to whomever then appears of record to be the owner of said Property.  Lender may bid and become the purchaser of the Mortgaged Property at any foreclosure sale hereunder.

**17. Borrower's Right to Reinstate.**  Notwithstanding Lender's acceleration of the sums secured by this Mortgage, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued if: (a) Borrower pays Lender all sums which then would be due under this Mortgage, the Note and Notes securing Future Advances, if any, had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in section 16 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action, as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired.  Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**18. Assignment of Rents; Appointment of Receiver.**  As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that so long as Borrower is not in default hereunder, Borrower shall, prior to acceleration under section 16 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration and/or foreclosure under section 16 hereof, or abandonment of the Property, Lender, in person or by agent, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due.  Lender shall be liable to account only for those rents actually received prior to foreclosure sale as provided in section 16.  Lender shall not be liable to account to Borrower or to any other person claiming any interest in the Property for any rents received after foreclosure.

**19. Loan Charges.**  If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (a) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by mailing a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment under the Note.

**20. Legislation.**  If, after the date hereof, enactment or expiration of applicable laws have the effect either of rendering the provisions of the Note, this Mortgage or any Rider, unenforceable according to their terms, or all or any part of the sums secured hereby uncollectible, as otherwise provided in this Mortgage or the Note, or of diminishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by this Mortgage to be immediately due and payable.

**21. Satisfaction.**  When the balance of all outstanding sums including finance charges and other charges, if any, secured by this Mortgage is zero, Lender shall upon request of Borrower, release this Mortgage.  Borrower will pay all recordation costs, if any.  Absent a request from Borrower, this Mortgage shall remain in full force and effect for the term set forth above.  Lender, at Lender's option, may allow a partial release of the Property on terms acceptable to Lender and Lender may charge a release fee.

**22. Waiver of Homestead.**  Borrower hereby waives all rights of homestead exemption in the Property and relinquishes all rights of dower and curtesy in the Property.

**23. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal, or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this section 23, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this section 23, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender at Wachovia Bank, National Association, Retail Credit Servicing, P.O. Box 50010, Roanoke, VA  24022 of any default under the superior encumbrance and of any sale or other foreclosure action.

**IN WITNESS WHEREOF,** Borrower has executed this Mortgage and adopted as his seal the word ("SEAL") appearing beside his name.

Signed, sealed and delivered by:

_____ [SEAL]   *This Is The Customer's Legal Signature*
Borrower
**SHARON TRUFFIN**

_____ [SEAL]   *This Is The Customer's Legal Signature*
Borrower
**CARLOS TRUFFIN**

_____ [SEAL]
Borrower

_____ [SEAL]
Borrower

STATE OF NEW JERSEY            )
                                                     ) ss
COUNTY OF  ESSEX            )

BE IT REMEMBERED, that on this 23rd day of August , 2003 , in the County and State aforesaid, before me, a Notary Public authorized to take acknowledgements and proofs in said County and State, personally appeared  Sharon Truffin and Carlos Truffin

_____

_____

who, I am satisfied is the Borrower named in and who executed the foregoing instrument and he did acknowledge that he signed, sealed and delivered same as his act and deed for the uses and purposes therein expressed.

_____
Signature of Notary Public

[NOTARY SEAL]

Andrew B. Waxman
_____
Notary Public Name Typed or Printed

My commission expires: _____ 7/31/05 _____

ANDREW B. WAXMAN
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7/31/2005

# EXHIBIT B

STATISTICAL INFORMATION ONLY: Debtor must select the number of each of the following items included in the Plan.

**0** Valuation of Security    **0**    Assumption of Executory Contract or Unexpired Lease    **0**    Lien Avoidance

Last revised: September 1, 2018

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In Re:

SHARON TRUFFIN

Debtor(s)

Case No.:     19-23622

Judge:     Sherwood

## Chapter 13 Plan and Motions

☐ Original      ☐ Modified/Notice Required      Date:   12/3/19

☐ Motions Included      ☒ Modified/No Notice Required

THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS MAY BE AFFECTED

You should have received from the court a separate *Notice of the Hearing on Confirmation of Plan*, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. Anyone who wishes to oppose any provision of this Plan or any motion included in it must file a written objection within the time frame stated in the *Notice*. Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. This Plan may be confirmed and become binding, and included motions may be granted without further notice or hearing, unless written objection is filed before the deadline stated in the Notice. The Court may confirm this plan, if there are no timely filed objections, without further notice. See Bankruptcy Rule 3015. If this plan includes motions to avoid or modify a lien, the lien avoidance or modification may take place solely within the chapter 13 confirmation process. The plan confirmation order alone will avoid or modify the lien. The debtor need not file a separate motion or adversary proceeding to avoid or modify a lien based on value of the collateral or to reduce the interest rate. An affected lien creditor who wishes to contest said treatment must file a timely objection and appear at the confirmation hearing to prosecute same.

> **The following matters may be of particular importance. Debtors must check one box on each line to state whether the plan includes each of the following items. If an item is checked as "Does Not" or if both boxes are checked, the provision will be ineffective if set out later in the plan.**

THIS PLAN:

☐ DOES ☒ DOES NOT CONTAIN NON-STANDARD PROVISIONS. NON-STANDARD PROVISIONS MUST ALSO BE SET FORTH IN PART 10.

☐ DOES ☒ DOES NOT LIMIT THE AMOUNT OF A SECURED CLAIM BASED SOLELY ON VALUE OF COLLATERAL, WHICH MAY RESULT IN A PARTIAL PAYMENT OR NO PAYMENT AT ALL TO THE SECURED CREDITOR. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

☐ DOES ☒ DOES NOT AVOID A JUDICIAL LIEN OR NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

Initial Debtor(s)' Attorney: SM     Initial Debtor: _____     Initial Co-Debtor: _____

**Part 1:    Payment and Length of Plan**

a.  The debtor shall pay $ _____ 100 _____ per _____ Month _____ to the Chapter 13 Trustee, starting on
    _____ August 1, 2019 _____ for approximately _____ 12 _____ months.

b.  The debtor shall make plan payments to the Trustee from the following sources:

    ☒   Future earnings

    ☐   Other sources of funding (describe source, amount and date when funds are available):

c.  Use of real property to satisfy plan obligations:

    ☒  Sale of real property
    Description: 8 Meadow Lane, Roseland, New Jersey 07068

    Proposed date for completion:  April 1, 2020

    ☐  Refinance of real property:
    Description:
    Proposed date for completion: _____

    ☐  Loan modification with respect to mortgage encumbering property:
    Description:
    Proposed date for completion: _____

d.  ☐ The regular monthly mortgage payment will continue pending the sale, refinance or loan modification.

e.  ☒ Other information that may be important relating to the payment and length of plan:

Upon sale of the above property, debtor will payoff the chapter 13 case in full resulting in a 100% dividend.

**Part 2:** Adequate Protection ☒ NONE

a.  Adequate protection payments will be made in the amount of $ _____ to be paid to the Chapter 13 Trustee and disbursed pre-confirmation to _____ (creditor).

b.  Adequate protection payments will be made in the amount of $ _____ to be paid directly by the debtor(s) outside the Plan, pre-confirmation to: _____ (creditor).

**Part 3:** Priority Claims (Including Administrative Expenses)

a.  All allowed priority claims will be paid in full unless the creditor agrees otherwise:

| Creditor | Type of Priority | Amount to be Paid |
|---|---|---|
| CHAPTER 13 STANDING TRUSTEE | ADMINISTRATIVE | AS ALLOWED BY STATUTE |
| ATTORNEY FEE BALANCE | ADMINISTRATIVE | BALANCE DUE: $0.00 |
| DOMESTIC SUPPORT OBLIGATION | | Not Applicable     ⊞ |

b.  Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount: Check one:

☒ None

☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim pursuant to 11 U.S.C.1322(a)(4):

| Creditor | Type of Priority | Claim Amount | Amount to be Paid |
|---|---|---|---|
| | Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount. | | |

**Part 4:    Secured Claims**

### a. Curing Default and Maintaining Payments on Principal Residence: ☒ NONE

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor shall pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| Wells Fargo | Mortgage | $11,017.63 | N/A | $11,017.63 | Regular payments to continue outside the plan per the note and mortgage |

### b. Curing and Maintaining Payments on Non-Principal Residence & other loans or rent arrears: ☒ NONE

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor will pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| | | | | | |

### c. Secured claims excluded from 11 U.S.C. 506: ☐ NONE

The following claims were either incurred within 910 days before the petition date and are secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or incurred within one year of the petition date and secured by a purchase money security interest in any other thing of value:

| Name of Creditor | Collateral | Interest Rate | Amount of Claim | Total to be Paid through the Plan Including Interest Calculation |
|---|---|---|---|---|
| | | | | |

**d. Requests for valuation of security, Cram-down, Strip Off & Interest Rate Adjustments** ☐ **NONE**

1.) The debtor values collateral as indicated below. If the claim may be modified under Section 1322(b)(2), the secured creditor shall be paid the amount listed as the "Value of the Creditor Interest in Collateral," plus interest as stated. The portion of any allowed claim that exceeds that *value shall be treated as an unsecured claim*. If a secured claim is identified as having "NO VALUE" it shall be treated as an unsecured claim.

**NOTE: A modification under this Section ALSO REQUIRES
the appropriate motion to be filed under Section 7 of the Plan.**

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Annual Interest Rate | Total Amount to be Paid |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

2.) Where the Debtor retains collateral and completes the Plan, payment of the full amount of the allowed secured claim shall discharge the corresponding lien.

**e. Surrender** ☒ **NONE**

Upon confirmation, the stay is terminated as to surrendered collateral only under 11 U.S.C. 362(a) and that the stay under 11 U.S.C 1301 be terminated in all respects. The Debtor surrenders the following collateral:

| Creditor | Collateral to be Surrendered | Value of Surrendered Collateral | Remaining Unsecured Debt |
|---|---|---|---|
|  |  |  |  |

**f. Secured Claims Unaffected by the Plan** ☐ **NONE**

The following secured claims are unaffected by the Plan:

**g. Secured Claims to be Paid in Full Through the Plan**: ☐ **NONE**

| Creditor | Collateral | Total Amount to be Paid Through the Plan |
|---|---|---|
|  |  |  |

---

**Part 5:    Unsecured Claims** ☐ **NONE**

**a. Not separately classified** allowed non-priority unsecured claims shall be paid:

☐ Not less than $ _____ to be distributed *pro rata*

☒ Not less than 100 _____ percent

☐ *Pro Rata* distribution from any remaining funds

**b. Separately classified unsecured** claims shall be treated as follows:

| Creditor | Basis for Separate Classification | Treatment | Amount to be Paid |
|---|---|---|---|
|  |  |  |  |

**Part 6:   Executory Contracts and Unexpired Leases** ☐ **NONE**

(NOTE:  See time limitations set forth in 11 U.S.C. 365(d)(4) that may prevent assumption of non-residential real property leases in this Plan.)

All executory contracts and unexpired leases, not previously rejected by operation of law, are rejected, except the following, which are assumed:

| Creditor | Arrears to be Cured in Plan | Nature of Contract or Lease | Treatment by Debtor | Post-Petition Payment |
|---|---|---|---|---|
|  |  |  |  |  |

**Part 7:   Motions** ☒ **NONE**

NOTE:  All plans containing motions must be served on all potentially affected creditors, together with local form, *Notice of Chapter 13 Plan Transmittal*, within the time and in the manner set forth in D.N.J. LBR 3015-1. A *Certification of Service, Notice of Chapter 13 Plan Transmittal and valuation* must be filed with the Clerk of Court when the plan and transmittal notice are served.

**a.  Motion to Avoid Liens Under 11. U.S.C. Section 522(f).**   ☒ **NONE**

The Debtor moves to avoid the following liens that impair exemptions:

| Creditor | Nature of Collateral | Type of Lien | Amount of Lien | Value of Collateral | Amount of Claimed Exemption | Sum of All Other Liens Against the Property | Amount of Lien to be Avoided |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

**b. Motion to Avoid Liens and Reclassify Claim from Secured to Completely Unsecured.** ☒ NONE

The Debtor moves to reclassify the following claims as unsecured and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor's Interest in Collateral | Total Amount of Lien to be Reclassified |
|----------|-----------|---------------|------------------------|----------------|--------------------------------------------|------------------------------------------|
|          |           |               |                        |                |                                            |                                          |

**c. Motion to Partially Void Liens and Reclassify Underlying Claims as Partially Secured and Partially Unsecured.** ☒ NONE

The Debtor moves to reclassify the following claims as partially secured and partially unsecured, and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Amount to be Deemed Secured | Amount to be Reclassified as Unsecured |
|----------|-----------|---------------|------------------------|------------------------------|-----------------------------------------|
|          |           |               |                        |                              |                                         |

## Part 8: Other Plan Provisions

**a. Vesting of Property of the Estate**

☒ Upon confirmation

☐ Upon discharge

**b. Payment Notices**

Creditors and Lessors provided for in Parts 4, 6 or 7 may continue to mail customary notices or coupons to the Debtor notwithstanding the automatic stay.

### c. Order of Distribution

The Standing Trustee shall pay allowed claims in the following order:

1) Ch. 13 Standing Trustee commissions

2) Secured Claims _____

3) Priority Claims _____

4) Unsecured Claims _____

### d. Post-Petition Claims

The Standing Trustee ☐ is, ☒ is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a) in the amount filed by the post-petition claimant.

---

**Part 9:** Modification ☒ NONE

If this Plan modifies a Plan previously filed in this case, complete the information below.

Date of Plan being modified: 8/1/19 _____.

| Explain below **why** the plan is being modified: | Explain below **how** the plan is being modified: |
| --- | --- |
| Extending the time to sell real estate located a 8 Meadow Lane, Roseland, NJ & to include mortgage cure to Wells Fargo on debtor's residence | Extending the time to sell real estate located a 8 Meadow Lane, Roseland, NJ & to include mortgage cure to Wells Fargo on debtor's residence |

Are Schedules I and J being filed simultaneously with this Modified Plan?     ☐ Yes     ☒ No

---

**Part 10:** Non-Standard Provision(s): Signatures Required

Non-Standard Provisions Requiring Separate Signatures:

☒ NONE

☐ Explain here:

Any non-standard provisions placed elsewhere in this plan are ineffective.

## Signatures

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Plan.

By signing and filing this document, the debtor(s), if not represented by an attorney, or the attorney for the debtor(s) certify that the wording and order of the provisions in this Chapter 13 Plan are identical to Local Form, *Chapter 13 Plan and Motions*, other than any non-standard provisions included in Part 10.

I certify under penalty of perjury that the above is true.

Date: ____12/3/19____

Date: _____

Date: ____12-4-19____

_____
Debtor

_____
Joint Debtor

_____
Attorney for Debtor(s)

United States Bankruptcy Court
District of New Jersey

In re:                                                              Case No. 19-23622-JKS
Sharon Truffin                                                      Chapter 13
          Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-2          User: admin          Page 1 of 1          Date Rcvd: Dec 05, 2019
                             Form ID: pdf901       Total Noticed: 14

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Dec 07, 2019.
db          +Sharon Truffin,   106 Summit Avenue,   Bloomfield, NJ 07003-3866
cr          +WELLS FARGO BANK, N.A.,   Phelan Hallinan & Schmieg, PC,   1617 JFK Boulevard,   Suite 1400,
             Philadelphia, PA 19103-1814
518349533   +KML Law Group, P.C.,   216 Haddon Ave,   Suite 406,   Collingswood, NJ 08108-2812
518359786   +Resurgent Capital Services as agent for Via Novus,   Resurgent Capital Services,   PO Box 10587,
             Greenville, SC 29603-0587
518349534   +Shapiro & Diaz,   14000 Commerce Parkway,   Suite B,   Mount Laurel, NJ 08054-2242
518349536   ++WELLS FARGO BANK NA,   WELLS FARGO HOME MORTGAGE AMERICAS SERVICING,
             ATTN BANKRUPTCY DEPT MAC X7801-014,   3476 STATEVIEW BLVD,   FORT MILL SC 29715-7203
             (address filed with court: Wells Fargo Hm Mortgag,   8480 Stagecoach Cir,
             Frederick, MD 21701)
518349535   +Wells Fargo Bank,   Attn: Written Correspondnce Dept,   Po Box 10335,
             Des Moines, IA 50306-0335
518415942    Wells Fargo Bank, N.A.,   Default Document Processing,   MAC# N9286-01Y,
             1000 Blue Gentian Road,   Eagan MN 55121-7700

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
smg          E-mail/Text: usanj.njbankr@usdoj.gov Dec 06 2019 00:00:29   U.S. Attorney,   970 Broad St.,
             Room 502,   Rodino Federal Bldg.,   Newark, NJ  07102-2534
smg         +E-mail/Text: ustpregion03.ne.ecf@usdoj.gov Dec 06 2019 00:00:28   United States Trustee,
             Office of the United States Trustee,   1085 Raymond Blvd.,   One Newark Center,   Suite 2100,
             Newark, NJ 07102-5235
518349531    E-mail/Text: bkmailbayview@bayviewloanservicing.com Dec 06 2019 00:00:52
             Bayview Financial Loan,   Attn: Bankruptcy Dept,   4425 Ponce De Leon Blvd. 5th Floor,
             Coral Gables, FL 33146-1873
518466499   +E-mail/Text: bkmailbayview@bayviewloanservicing.com Dec 06 2019 00:00:52
             Bayview Loan Servicing, LLC,   4425 Ponce De Leon Boulevard,   5th Floor,
             Coral Gables, FL 33146-1837
518349532   +E-mail/PDF: AIS.cocard.ebn@americaninfosource.com Dec 06 2019 00:13:25   Capital One,
             Attn: Bankruptcy,   Po Box 30285,   Salt Lake City, UT 84130-0285
518364953   +E-mail/PDF: EBN_AIS@AMERICANINFOSOURCE.COM Dec 06 2019 00:14:32
             Capital One Bank (USA), N.A.,   4515 N Santa Fe Ave,   Oklahoma City, OK 73118-7901
                                                                                        TOTAL: 6

          ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
518387113    Carlos Truffin
                                                                        TOTALS: 1, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

Addresses marked '++' were redirected to the recipient's preferred mailing address
pursuant to 11 U.S.C. 342(f)/Fed.R.Bank.PR.2002(g)(4).

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social
Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required
by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Dec 07, 2019                              Signature:  /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on December 4, 2019 at the address(es) listed below:
          Marie-Ann Greenberg   magecf@magtrustee.com
          Melissa N. Licker   on behalf of Creditor   Bayview Loan Servicing, LLC NJ_ECF_Notices@mccalla.com
          Phillip Andrew Raymond   on behalf of Creditor   Bayview Loan Servicing, LLC
           phillip.raymond@mccalla.com
          Rebecca Ann Solarz   on behalf of Creditor   Bayview Loan Servicing, LLC rsolarz@kmllawgroup.com
          Robert Davidow   on behalf of Creditor   WELLS FARGO BANK, N.A. nj.bkecf@fedphe.com
          Stuart D. Minion   on behalf of Debtor Sharon  Truffin sminion@minionsherman.com
          U.S. Trustee   USTPRegion03.NE.ECF@usdoj.gov
                                                                        TOTAL: 7